# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**LAPRICIA S. HOOKS,**

    **Plaintiff,**

 v.            Case No. 08-C-0631

**DENNIS RYAN,
CINDA STRICKER,
MARCIA RAMIREZ,[1]
CARLA HECK,
BUNNY BOOKER,
NORA GOMEZ,
KEVIN COUGHLIN,
SHARON BERGE,
and ANDREA LEFFELHOLZ,**

    **Defendants.**

## DECISION AND ORDER

On July 23, 2008, Plaintiff Lapricia S. Hooks ("Hooks") filed a complaint *pro se* against the State of Wisconsin, Bureau of Regulation and Licensing, and Department of Quality Assurance alleging that the defendants violated her constitutional rights by harassing her to the extent that she was forced to close her child care center and surrender her adult family license. Hooks also alleged that she has a non-profit transportation company that was denied state funding because as posited by Hooks she was the only female minority business owner seeking the funding.

---

[1] Hooks named "Marsha Ramirez" as a defendant. However, an e-mail attached as exhibit VII to the amended complaint indicates that the name is "Marcia Ramirez." The Court has amended the caption to reflect the correct name.
Case 2:08-cv-00631-RTR   Filed 05/06/09   Page 1 of 15   Document 39

On July 31, 2008, this Court issued a Decision and Order directing Hooks to clarify the information that she had provided in her petition and affidavit in order to proceed without prepayment of fees and costs. Hooks filed an amended petition and affidavit to proceed without prepayment of fees and costs. In a Decision and Order dated September 24, 2008, the Court considered the information provided by Hooks and concluded that Hooks was unable to pay the filing fee for commencing this action and allowed Hooks to proceed *in forma pauperis*. The Court liberally construed Hooks's complaint as arising under 42 U.S.C. § 1983.[2] The Court further discussed that Hooks's allegations arguably raised an equal protection claim and a due process claim. Hooks, however, named defendants who were immune from suit due to the Eleventh Amendment of the United States Constitution.[3] The Court allowed Hooks leave to amend her complaint to name the individual officials of the State of Wisconsin, Bureau of Regulation and Licensing and Department of Quality Assurance whom she claims were involved in the alleged violations.

On October 8, 2008, Hooks filed a two-part amended complaint and named individual state employees and one county official. The first part of Hooks's complaint names as defendants Dennis Ryan ("Ryan"), an employee of the Milwaukee County Department of Aging; Cinda Stricker ("Stricker"), the licensing chief of the Bureau of Regulation and

---

[2] 42 U.S.C. § 1983 provides in pertinent part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[3] The Eleventh Amendment provides as follows: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

Licensing; Marcia Ramirez ("Ramirez"), a supervisor with the Bureau of Regulation and Licensing; Carla Heck ("Heck"), a child care licensor with the Bureau of Regulation and Licensing; Bunny Booker ("Booker"), an assisted living surveyor; Nora Gomez ("Gomez"), a quality assurance program specialist; and Kevin Coughlin ("Coughlin"), the director of the Bureau of Assisted Living. Liberally construed, Hooks alleges that these defendants engaged in conduct that constituted harassment to the extent that she was forced to close her child care center and surrender her adult family home license in violation of her Fourteenth Amendment rights to equal protection and due process. In a Decision and Order dated December 2, 2008, the Court allowed Hooks to proceed against these defendants in their individual capacities.

The second part of Hooks's amended complaint names Sharon Berge ("Berge") and Andrea Loeffelholz ("Loeffelholz") as defendants in conjunction with her claim that her non-profit transportation company, Kadyn's Transportation, Inc. ("Kadyn's Transportation"), which sought funding for the 2008 WETAP ("Wisconsin Employment Transportation Assistance Program") Grant Cycle was denied funding because, as alleged by Hooks, she was the only female minority business owner seeking the funding. Berge and Loeffelholz are employed as WETAP program managers. The Court allowed Hooks to proceed with a Fourteenth Amendment equal protection claim against Berge and Loeffelholz in their individual capacities.

On February 2, 2009, the state defendants, Stricker, Ramirez, Heck, Booker, Gomez, Coughlin, Loeffelholz and Berge filed a motion to dismiss. On February 10, 2009,

3

Ryan, the remaining defendant and an employee of Milwaukee County, filed a motion to dismiss. The motions are fully briefed and will be considered by the Court.

**FACTUAL BACKGROUND**

In June 2006, Hooks alleges that she voluntarily closed Jahar's Learning Center, LLC ("Jahar's Learning Center"), a child care facility located in her residence in Milwaukee, Wisconsin. In August 2006, Hooks alleges that her residence was licensed as an adult family home, Our New Beginning, LLC ("Our New Beginning"). During 2006 and 2007, Hooks further alleges that she contacted Ryan, an employee of the Milwaukee County Department of Aging, as well as other county employees, in order to secure a contract to provide services to adult residents. (Am. Compl. at 2-3.) It appears that Milwaukee County declined to contract with Our New Beginning.

Hooks then attempted to reopen Jahar's Learning Center and sent a request to Stricker, the licensing specialist with the Bureau of Regulation and Licensing. In a letter dated February 22, 2007, Hooks requested to have the license for Jahar's Learning Center reinstated. (*Id.* at 3-4.) Hooks alleges that the state defendants unnecessarily delayed in letting her reopen her child care center in 2007. (*Id.*) Jahar's Learning Center, however, was reopened in June of 2007 for a period of six months. (*Id.* at 4.)

Hooks alleges that, following the reopening of her child care center in June of 2007, Hooks was harassed because Heck, a child care licensor with the Bureau of Regulation and Licensing, made four unannounced visits to Jahar's Learning Center and cited Hooks for

4

a violation during one of those visits. (*Id.* at 4-5.) Hooks's alleges that on December 31, 2007, the six month probationary license for Jahar's Learning Center expired. (*Id.* at 6.)

Hooks alleges that she was harassed because Jahar's Learning Center was issued a second six-month probationary license rather than a two-year license. (*Id.* at 6-7.) Hooks also alleges that the defendants continually harassed her for having a child care center and an adult family home license. (*Id.* at 7-13.) As part of the alleged harassment, Hooks was issued a citation for operating the child care center at the same address as the adult family home. Correspondence attached to Hooks's amended complaint documents that Hooks was informed by state employees that she needed to decide which license she wanted to continue, as a dual license for a child day care and an adult family home was not permitted. (*Id.* at Ex. VII.) It appears that when the state defendants realized that Hooks had been mistakenly dual-licensed, the defendants asked her to choose between the licenses. Hooks alleges that her interactions with the defendants on the dual-licensure issue ultimately led her to surrender both her child care license and her adult family home license. (*Id.* at 13.) Hooks contends she was deprived the equal protection of the law, was deprived of "a way of life, liberty and property" without due process of law and was deprived of "the pursuit of happiness." (*Id.* at 13.)

The second part of Hooks's amended complaint alleges that in May, 2007, Hooks opened Kadyn's Transportation and applied for grant funding from Wisconsin Employment Transportation Assistance Program ("WETAP"). (*Id.* at 15.) Kadyn's Transportation is described as a "new start up company without any dedicated funding." (*Id.*) Kadyn's Transportation was listed in a December 6, 2007, WETAP Memorandum, however,
5

Kaydn's Transportation was later denied the grant request.  The December 21, 2007, letter explaining the grant denial stated that the grant was denied because "the WETAP program is currently funding a Day Care Transportation Provider in the Milwaukee Urbanized Area where you are currently contracted to be a transportation vendor and that is a conflict of interest." (*Id.* at Ex. V.)  The denial also noted that Kadyn's Transportation failed to show "local match support."  (*Id.*)  Hooks alleges that she was the "only minority business women sitting at the round table with a non-profit organization and got denied funding."  (*Id.* at 16.)

## APPLICABLE LAW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  Dismissal of an action under this motion is warranted if the plaintiff can prove no set of facts in support of her claims that would entitle her to relief.  *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1429-30 (7th Cir. 1996).  Furthermore, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)) (internal quotations omitted).  This Court "may take into consideration documents incorporated by reference to the pleadings" and "may also take judicial notice of matters of public record" without converting a motion to dismiss into a motion for summary judgment. *United States v. Wood*, 925 F.2d 1580, 1582

(7th Cir. 1991). The Court, however, must look to the factual allegations contained within the four corners of the complaint. *See Palda v. Gen. Dynamics Corp.*, 47 F.3d 872, 875 (7th Cir. 1995).[4]

**ANALYSIS**

In the Court's Decision and Order, dated December 2, 2008, the Court observed that Hooks's amended complaint only lists Hooks as a plaintiff, even though the complaint involves Hooks's three business entities, Jahar's Learning Center, Our New Beginnings and Kadyn's Transportation.[5] The real parties in interest are free-standing business entities rather than Hooks as an individual. For example, the complaint alleges that Kadyn's Transportation was the organization to apply for the grant, Kadyn's Transportation was listed in the December 4, 2007 WETAP Memorandum and Kadyn's Transportation was the organization that failed to receive the grant.

The general principle is that a corporate shareholder does not have an individual right of action against third parties for damages to the shareholder resulting indirectly from injury to the corporation. *Twohy v. First Nat'l Bank of Chicago*, 758 F.2d 1185, 1194 (7th Cir. 1985). Wisconsin law is clear that causes of action belonging to the corporation cannot be

---

[4] Hooks's response to the defendants' motions to dismiss is to submit new factual allegations and new exhibits that are not contained in her complaint. Hooks's new factual allegations and new exhibits will be disregarded by this Court.

[5] The Court's Decision and Order stated, "Hooks's complaint involves three business entities, Jahar's Learning Center LLC, Our New Beginning LLC and Kaydn's [sic] Transportation, Inc. At this early stage of the proceedings, it is not clear whether the claims Hooks asserts are her claims or whether they are the claims of a business entity or entities. This issue raises the potential question of Hooks's standing to pursue any Fourteenth Amendment claims. Also as a *pro se* plaintiff, Hooks would not be able to represent an LLC or a corporation. Such entities must appear by counsel. *See United States v. Hagerman*, 545 F.3d 579, 581 (7th Cir. 2008)." Docket # 9, Decision and Order, December 2, 2008.

maintained by the individual shareholder, unless the shareholder has suffered direct injury. *Rose v. Schantz*, 56 Wis. 2d 222, 229, 201 N.W.2d 593, 597 (1972). Consequently, Hooks suffered no injury and lacks standing. *See Flynn v. Merrick*, 881 F.2d 446, 450 (7th Cir. 1989) ("The district court correctly determined that a plaintiff-shareholder cannot maintain a civil rights action for damages suffered by the corporation. . . . Filing suit under 42 U.S.C. § 1983 does not diminish the requirement that the shareholder suffer some individual, direct injury."). In this cause of action, Kadyn's Transportation is not a party and Hooks lacks standing to bring a claim on behalf of Kadyn's Transportation. Moreover, as discussed later in this Decision, the allegations relevant to the grant issue fail to state a claim for relief.

With regard to a limited liability company, such as Jahar's Learning Center and Our New Beginning, under Wis. Stat. § 183.1101, an action on behalf of an LLC is to be brought "in the name of the limited liability company" and pursuant to authorization which must be described in the complaint. Wis. Stat. § 183.1101(3) ("In an action brought on behalf of a limited liability company, the complaint shall describe with particularity the authorization of the member to bring the action and the determination of the authorization."). The amended complaint does not satisfy these pleading requirements. Moreover, commercial entities do not have a liberty interest or fundamental rights. *Mid-American Waste Sys., Inc. v. City of Gary*, 49 F.3d 286, 291 (7th Cir. 1995) ("Corporations do not have fundamental rights; they do not have liberty interests, period.").

The Court found that the only possible claim related to the denial of a grant for Kadyn's Transportation was an equal protection claim. Hooks's alleged in her amended

complaint that she was the only minority business woman "sitting at the round table" who was denied funding. (Am. Compl. at 16.) Hooks, however, later clarifies that her "claim does not rest on gender and race" but instead, rests on being denied the pursuit of happiness. Docket # 23 at 7.

In order to maintain an equal protection claim, Hooks must show that the defendants intentionally discriminated against her because of her membership in a particular class. *Gray v. Lacke*, 885 F.2d 399, 414 (7th Cir. 1989), *cert. denied*, 494 U.S. 1029 (1990). Hooks must show both discriminatory treatment and discriminatory intent on the part of the defendants. *David K. v. Lane*, 839 F.2d 1265 (7th Cir. 1988) ("The Equal Protection Clause has long been limited to instances of purposeful or invidious discrimination rather than erroneous or even arbitrary administration of state powers."). Hooks is unable to satisfy this burden.

As the record demonstrates, one of the reasons Kadyn's Transportation was denied a grant was that the grant application was incomplete. Moreover, the complaint admits that Kadyn's Transportation did not provide documentation of a local match. *See* Wis. Stat. § 85.24(3)(d) ("As a condition of obtaining a grant under this paragraph, a public or private organization may be required to provide matching funds at any percentage."). The WETAP grant application was only complete if a local match was shown. *See* Wis. Stat. § 85.24(3)(d), Wis Stat. § 106.26(3)(c)1. Hooks does not dispute that Kadyn's Transportation failed to show the existence of matching funds. Hooks's allegations related to Kadyn's Transportation and the grant denial are dismissed for failure to state a claim.

9

With regard to Hooks's allegations related to surrendering her license to operate an adult family home, Our New Beginning, Hooks does not allege that the mistreatment was due to Hooks's membership in a protected group. Therefore, construing Hooks's claim liberally, Hooks's claim can only survive as a "class of one" equal protection claim. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (Successful equal protection claims brought by a "class of one," have been recognized "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."). The Equal Protection Clause "is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Id.* "The paradigmatic 'class of one' case . . . is one in which a public official, with no conceivable basis for his action other than spite or some other improper motive (improper because unrelated to his public duties), comes down hard on a hapless private citizen." *Lauth v. McCollum*, 424 F.3d 631, 633 (7th Cir. 2005). The potential for "endless vistas of federal liability" loom large, and consequently, it is difficult to succeed on a "class of one" theory. *Id.*

In order to prove a "class of one" equal protection claim, Hooks must demonstrate that the government is treating unequally those individuals who are prima facie identical in all relevant aspects and that there is no rational basis for the difference in treatment or the cause of the differential treatment is a "totally illegitimate animus" toward the plaintiff by the defendants. *See Woodruff v. Mason*, 542 F.3d 545, 554 (7th Cir. 2008). The class of

10

one plaintiff bears the burden of proving that she has "suffered intentional, irrational, and arbitrary discrimination." *Bell v. Duperrault*, 367 F.3d 703, 707 (7th Cir. 2004). The plaintiff must "eliminate any reasonably conceivable set of facts that could provide rational basis for the classification." *Id.* at 708.

In this case, Hooks fails to allege that she was treated differently than any other person solely because of animus toward her by the defendants. Consequently, she fails to state a claim for an equal protection violation. Moreover, Hooks was asking for a dual licensure that is not permitted by the Wisconsin Administrative Code. When the state defendants realized that Hooks had been mistakenly dual-licensed, the defendants asked her to choose between the licenses. Hooks's request for a dual-licensure runs afoul of the Wisconsin Administrative Code. Wis. Admin. Code § HFS 45.05(3)(a)[6] ("A provider may not be engaged in any other activity or occupation during the hours of operation of the center, except for daily maintenance of the home"); Wis. Admin. Code § HFS 88.05(3)(o) ("The [adult family] home shall not be used for any business purpose that regularly brings customers to the home so that residents' use of the home as their residence or the residents' privacy is adversely affected."). Asking a corporate entity to abide by the administrative code in order to receive a license does not constitute a cause of action under the United States Constitution or any other

---

[6] During the time Hooks was licensed and/or seeking licensure, the operative code was Wis. Admin. Code § HFS 45.05(3)(a). The rules relating to child care centers were renumbered following the creation of the Department of Children and Families (DCF). The renumbering became effective November 1, 2008. As of that date, Wis. Admin. Code § HFS 45.05(3)(a) became Wis. Admin. Code § DCF 250.05(3)(a).

statute. Consequently, the equal protection claim related to Hooks surrendering the license for Our New Beginning fails.[7]

Hooks's has also alleged a violation of her due process rights. The Fourteenth Amendment to the United States Constitution provides that no State may "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. To succeed on a procedural due process claim, a plaintiff must demonstrate a cognizable property interest, a deprivation of that interest, and a denial of due process. *Hudson v. City of Chicago*, 374 F.3d 554, 559 (7th Cir. 2004). The fundamental requirement of due process is "the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976). The due process clause is the source of three separate constitutional protections that may serve as a basis of a Section 1983 claim against a state and its agents and employees:

> First, the Clause incorporates many of the specific protections defined in the Bill of Rights. A plaintiff may bring suit under § 1983 for state officials' violation of his rights to, *e.g.,* freedom of speech or freedom from unreasonable searches and seizures. Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." *Daniels v. Williams*, 474 U.S. 327, 331 (1986). As to these two types of claims, the constitutional violation actionable under § 1983 is complete when the wrongful action is taken. . . . The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. A § 1983 action may be brought for a violation of procedural due process, but . . . [i]n procedural due process claims, the deprivation by state action of

---

[7] Hooks responds that the Wisconsin Administrative Code permits dual-licensing, however, Hooks cites a provision of the Code that allows the dual-licensing of an adult family home and a foster care home. This provision of the Code does not apply to the dual license of an adult family home and a child care center.

12

> a constitutionally protected interest in "life, liberty, or property" is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law. . . . The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.

*Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990). The United States Supreme Court has employed a two-step analysis when analyzing claims that a state has violated an individual's right to procedural due process. The first area of inquiry deals with whether there exists a "life, liberty, or property" interest protectable under the Fourteenth Amendment with which the state has interfered. The second step of the inquiry is whether the entity responsible for the alleged deprivation instituted constitutionally sufficient procedural protections. *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).

The Court, in permitting Hooks to proceed *in forma pauperis* liberally construed Hook's claim as a procedural due process claim. In the motion to dismiss filed by the state employees, it is clear that if Hooks had not chosen to surrender her adult family home license, she had adequate post-deprivation administrative remedies at her disposal. If Hooks had waited to receive a revocation of license notice based on her unlawful dual-licensure, Hooks would have had appeal rights under Wis. Admin. Cod § DHS 88.03(7)[8] and Wis. Stat. § §

---

[8]Wis. Admin. Code § DHS 88.03(7) provides that "[a]ny person whose application for a license is denied under sub. (3) or revoked under sub. (6)(d) or suspended under sub. (6)(e) may request a hearing on that decision under s. 227.42, Stats."

227.42[9] and 227.52.[10] The state employees cannot be accused of failing to provide due process when Hooks did not pursue the existing due process procedures to obtain a remedy. As for any procedural due process claim against defendant Ryan, licensing of Hooks's adult family home is strictly a State of Wisconsin function. Milwaukee County and Ryan have nothing to do with the licenses that Hooks needed to operate an adult family home or a child care center. Hooks has no procedural due process claim against Ryan.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. The Motion to Dismiss filed by Cinda Striker, Marcia Ramirez, Carla Heck, Bunny Booker, Nora Gomez, Kevin Coughlin, Andrea Loeffelholz and Sharon Berge (Docket #21) is **GRANTED** to the extent that Hooks's Amended Complaint fails to state a cause of action against these defendants.

2. The Motion to Dismiss filed by Dennis Ryan (Docket #26) is **GRANTED** to the extent that Hooks's Amended Complaint fails to state a cause of action against this defendant.

3. This cause of action is **DISMISSED** in its entirety with **PREJUDICE**.

4. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

---

[9] Wis. Stat. § 227.42 provides, in part, that "[i]n addition to any other right provided by law, any person filing a written request with an agency for hearing shall have the right to a hearing which shall be treated as a contested case if: (a) A substantial interest of the person is injured in fact or threatened with injury by agency action or inaction; . . ."

[10] Wis. Stat. § 227.52 provides, in part, that "[a]dministrative decisions which adversely affect the substantial interests of any person, whether by action or inaction, whether affirmative or negative in form, are subject to [judicial] review as provided in this chapter . . ."

Dated at Milwaukee, Wisconsin this 6th day of May, 2009.

>BY THE COURT
>*s/ Rudolph T. Randa*
>**Hon. Rudolph T. Randa**
>**Chief Judge**

15
Case 2:08-cv-00631-RTR   Filed 05/06/09   Page 15 of 15   Document 39